UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

JUAN HUMBERTO CASTILLO-ALVAREZ,              CIVIL NO. 14-542 (JRT/JSM)

       Petitioner,

v.                                               <u>REPORT AND RECOMMENDATION</u>

MICHELLE SMITH, Warden

       Respondent.


JANIE S. MAYERON, United States Magistrate Judge

This matter is before the undersigned United States Magistrate Judge upon Juan Humberto Castillo-Alvarez's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [Docket No. 1]. The case has been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

## I.    FACTUAL BACKGROUND

Petitioner Juan Humberto Castillo-Alvarez ("Petitioner") is an inmate at the Minnesota Correctional Facility in Stillwater, Minnesota. On January 20, 2011, Petitioner was convicted in Jackson County, Minnesota for kidnapping and second-degree intentional murder. <u>State v. Castillo-Alvarez</u>, 820 N.W.2d 601, 609, 611-12 (Minn. Ct. App. 2012) ("<u>Castillo-Alvarez I</u>"); <u>State v. Castillo-Alvarez</u>, 836 N.W.2d 527, 532 (Minn. 2013) ("<u>Castillo-Alvarez II</u>"). Petitioner was sentenced to 48 months imprisonment for kidnapping and 480 months imprisonment for second-degree murder, the terms to be served consecutively. <u>Castillo-Alvarez II</u>, 836 N.W.2d at 532.

The relevant facts underlying Petitioner's case are set out in <u>Castillo-Alvarez II</u>.

In June of 1997, 15-year-old Gregory Sky Erickson was kidnapped and murdered. Castillo-Alvarez II, 836 N.W.2d at 530.  Petitioner, who lived and owned a restaurant in Iowa, was a drug dealer who fronted drugs to street-level dealers.  Id.  Erickson was a street-level drug dealer, also living in Iowa, who had been fronted one pound of marijuana from another dealer, Luis Lua.  Id.  Erickson was to sell the marijuana and then pay Lua so that Lua could pay a debt he owed to Petitioner; however, police arrested Erickson and seized the drugs before they could be sold.  Id. at 530-31.  Petitioner was concerned that Erickson would tell the police about his drug business and ordered Lua to kill Erickson and leave his body in Minnesota.  Id. at 531.  Lua, accompanied by several other men, assaulted Erickson and then drove him to Petitioner's restaurant.  Id.  Subsequently, Lua and the other men kidnapped Erickson and assaulted him again in Iowa.  Id.  Lua pointed a gun at Erickson and told one of the men that Petitioner had told him to kill Erickson and leave his body in Minnesota.  Id.  Erickson was ultimately taken to an abandoned farmhouse in Jackson County, Minnesota, where he was shot and killed by Lua with the gun Petitioner had given him, and then shot by another man.  Id.  One week later, police discovered Erickson's body and executed a search warrant at Petitioner's restaurant.  Id.  During the search, officers found the gun used by Lua to shoot Erickson.  Petitioner had fled Iowa to Mexico before he could be arrested.  Id. at 531-32.

In 2004, Petitioner was arrested in Mexico, and the State of Iowa charged him with second-degree murder, kidnapping, and conspiracy in connection with Erickson's death.  Id. at 532.  Mexican officials returned Petitioner to the United States in October, 2006.  Following a jury trial in Iowa, Petitioner was convicted on all counts, but the Iowa

Court of Appeals reversed on speedy trial grounds.[1] State v. Castillo-Alvarez, No. 08-0868, 2009 WL 2960419 (Iowa Ct. App. Sept. 2, 2009).

In February, 2010, Petitioner was charged in Jackson County, Minnesota with two counts of aiding and abetting second-degree murder and one count of aiding and abetting kidnapping. See Castillo-Alvarez II, 836 N.W.2d at 532. The State of Minnesota initiated extradition proceedings.

While Petitioner was still in jail in Iowa on an unrelated charge, he brought a habeas petition in the District Court for Clay County, Iowa, in which he contended that Minnesota's attempt to extradite him violated Article 17 of the Extradition Treaty between the United States and Mexico. Castillo-Alvarez v. Krukow, Case No. FECR014816, p. 12[2] [Docket No. 17-1]. The court rejected Petitioner's argument on the grounds that Article 17 expressly allowed Minnesota to prosecute Petitioner because

---

[1]     In Castillo-Alvarez I, the Minnesota Court of Appeals stated:

> Others involved in the kidnapping and killing were charged and convicted for their roles in the crimes. Lua pleaded guilty and was sentenced to life in prison. See U.S. v. Ortiz, 40 F. Supp. 2d 1073, 1076 (N.D. Iowa 1999). An Iowa jury convicted Wedebrand, one of the shooters, of first-degree murder and first-degree kidnapping. He was sentenced to life imprisonment without parole. See Wedebrand v. State, No. 02–0568, 2003 WL 21543146, at *1 (Iowa Ct. App. July 10, 2003). Mann, who tried to shoot [Erickson] but the gun misfired, pleaded guilty to second-degree murder in Iowa, and is serving an indeterminate term of incarceration not to exceed 50 years. See State v. Mann, 602 N.W.2d 785, 787–88 (Iowa 1999).

820 N.W.2d at 611 n. 3.

[2]     The Court is referencing the page numbers assigned by the Court's electronic filing system, rather than as numbered by the state court.

the charges filed in Minnesota arose from the same set of facts which supported the extradition from Mexico to Iowa. Id., pp. 13-15.

After his Iowa habeas petition was denied, Petitioner was extradited to Minnesota where he filed a habeas petition in the Jackson County District Court. In the petition, Petitioner alleged that his extradition from Iowa to Minnesota violated Article 17 of the U.S.-Mexico Extradition Treaty. See Castillo-Alvarez v. Hawkinson, Civ. No. 10-4187 (PAM/JJG), Docket No. 14-15 (Memorandum in Support of Habeas Petition), pp. 2-5. On August 25, 2010, the Jackson County District Court, Judge Linda S. Titus, denied the habeas petition. The court found that Article 17 of the Extradition Treaty was satisfied because the charges pending against Petitioner in Minnesota arose from the same set of facts as the charges for which he was extradited from Mexico, and because the offense of second-degree murder carried a lesser penalty in Minnesota than in Iowa. Id., Docket No. 14-18 (August 26, 2010 Order), p. 7.

Two days after filing his habeas petition in Jackson County, Petitioner also brought a motion in the trial court to dismiss the Minnesota charges on grounds that Minnesota had violated Article 17 of the U.S.-Mexico Extradition Treaty. Id., Docket No. 14-4 (Notice of Motion and Motion dated July 8, 2010 in State of Minnesota vs. Castillo-Alverez, Jackson County, Fifth Judicial District, Minnesota, Court File No. 32-CR-10-31); Findings and Order on Motion to Dismiss in State of Minnesota vs. Castillo-Alverez, Jackson County, Fifth Judicial District, Minnesota, Court File No. 32-CR-10-31 ("September 13, 2010 Order") [Docket No. 15-1].[3]  On September 13, 2010, the Jackson County District Court, Judge Titus, denied the motion, holding that

---

[3]      Judge Titus's decision is also found at Hawkinson, Docket No. 14-8.

Petitioner's extradition challenge was barred by collateral estoppel because he had already litigated the issue in an Iowa habeas corpus action.  September 13, 2010 Order, pp. 11-12.  The trial court also found that Petitioner's prosecution in Minnesota did not violate the U.S.-Mexico Extradition Treaty.[4]  Id., pp. 12-14.

On October 8, 2010, while still awaiting trial in Minnesota, Petitioner filed a petition for a writ of habeas corpus in this district court, in which he once again contended that his extradition from Iowa to Minnesota breached the Extradition Treaty between the United States and Mexico.  Castillo-Alvarez v. Hawkinson, Civ. No. 10-4187 (PAM/JJG), 2011 WL 3759828, at *2 (D. Minn. Aug. 4, 2011).  Petitioner also asserted that his trial in Minnesota would violate the Double Jeopardy Clause and Minnesota law, and that he was deprived of his Sixth Amendment right to a speedy trial. Id.  The petition was dismissed without prejudice because Petitioner had not exhausted his available state-court remedies.  Id. at *4.

Following his conviction in January, 2011, Petitioner appealed his conviction to the Minnesota Court of Appeals.  Relevant to the instant habeas petition, Petitioner argued that (1) after his Iowa conviction was reversed, his prosecution in Minnesota violated his double jeopardy rights under Minn. Stat. § 609.045 and the Minnesota Constitution; (2) the district court erred in admitting his unrecorded statements to the FBI agent and an Iowa law enforcement officer in violation of State v. Scales, 775 N.W.2d 883 (Minn. 2009); (3) the district court erred in imposing consecutive

---

[4]    Petitioner had also moved to dismiss on grounds that the state lacked jurisdiction over him; the charges violated federal and state constitutional and state double jeopardy provisions; the statute of limitations for the kidnapping charge violated the Equal Protection Clause and the Privileges and Immunities Clause; and his statements to law enforcement agents were inadmissible.  September 13, 2010 Order, pp. 1, 8-9.  The trial court denied all of these motions as well.  Id., pp. 9, 14-19.

sentences and an upward departure without finding aggravating factors; (4) his prosecution in Minnesota violated the Extradition Treaty between the United States and Mexico; (5) his prosecution in Minnesota violated his constitutional right to equal protection, apparently because none of the others involved in Erickson's death were prosecuted in Minnesota; and (6) his counsel's failure to call two witnesses and to advise him not to testify amounted to ineffective assistance of counsel, in violation of the Sixth and Fourteenth Amendments.   Castillo-Alvarez I, 820 N.W.2d at 612, 625-27; Appendix, pp. 24-41, 47-51 (Appellant's Brief in Minnesota Court of Appeals); pp. 105-09, 112-31 (Appellant's Pro Se Supplemental Brief) [Docket No. 7].

The Minnesota Court of Appeals affirmed Petitioner's conviction.   The court found that neither Minn. Stat. § 609.045 nor the Minnesota Constitution barred a second prosecution in Minnesota for the same conduct for which he was prosecuted in Iowa. Castillo-Alvarez I, 820 N.W.2d at 613-14, 618.  In reaching its determination, the court noted that Petitioner had conceded that no federal double jeopardy violation had occurred.  Id., 820 N.W.2d at 614; see also Appendix, p. 28 (Appellant's Brief in Minnesota Court of Appeals) ("The successive prosecution of a person by two states for the same conduct does not violate the federal Double Jeopardy Clause. Heath v. Alabama, 474 U.S. 82, 88 (1985).").  As to Petitioner's challenge under the U.S.-Mexico Extradition Treaty, the court held that the claim was precluded on the basis of collateral estoppel because an Iowa court had already considered the claim and rejected it.  Id. at 626.  Petitioner's claim under Scales, as well as his sentencing and ineffective assistance of counsel claims, were denied on various state-law grounds, and

his equal protection claim was rejected because it had not been raised in the district court and was therefore waived.  Id. at 617-18, 621-24, 626-27.

On October 20, 2012, Petitioner filed a petition for review in the Minnesota Supreme Court.   Relevant to the instant habeas petition, he raised the following arguments: (1) his prosecution in Minnesota violated Minn. Stat. § 609.045 and the double jeopardy clause of the Minnesota Constitution; (2) the district court violated Scales by admitting evidence of an unrecorded police interrogation; (3) the State's prosecution violated the Extradition Treaty between the United States and Mexico—specifically, the doctrine of specialty; and (4) the district court erred by imposing consecutive sentences and a durational departure without explanation and without a finding of aggravating factors.  Appendix, pp. 331-39 (Petition for Review of Decision of Court of Appeals).  The Minnesota Supreme Court granted review as to the issues of double jeopardy and the alleged Scales violation.  Appendix, p. 411 (Order Granting Review in Minnesota Supreme Court).  All other claims were denied consideration.  Id.

On September 11, 2013, the Minnesota Supreme Court held that Petitioner's prosecution in Minnesota did not violate Minn. Stat. § 609.045 or the double jeopardy clause of the Minnesota Constitution.  Castillo-Alvarez II, 836 N.W.2d at 533-36.   In reaching its determination, the court found that, because the Minnesota Constitution offered no greater protection than the double jeopardy clause of the Federal Constitution (a point that Petitioner had conceded), his conviction was valid.  Castillo-Alvarez II, 836 N.W.2d at 534-36; see also Appendix, p. 440 (Appellant's Brief to Minnesota Supreme Court) ("The successive prosecution of a person by two states for the same conduct does not violate the federal Double Jeopardy Clause.

<u>Heath v. Alabama</u>, 474 U.S. 82, 88 (1985).").   Petitioner's challenge under <u>Scales</u> was rejected on state-law grounds.   <u>Castillo-Alvarez II</u>, 836 N.W.2d at 536-40.[5]

On February 27, 2014, Petitioner filed the present habeas Petition, asserting four grounds for relief:

(1) **Ground One**: Petitioner's Minnesota convictions violate the Double Jeopardy Clause of both the Minnesota and Federal Constitutions;

(2) **Ground Two**: Petitioner's self-incrimination and fair-trial rights under the Minnesota and Federal Constitutions were violated when his statement, which was obtained from an unrecorded interrogation in Texas, was admitted contrary to <u>Scales</u>;

(3) **Ground Three**: The Minnesota district court erred in imposing consecutive sentences with a durational departure without finding severe aggravating factors;

(4) **Ground Four**: Petitioner's extradition from Mexico violated the federal constitutional provision regarding interstate extradition, and the Extradition Treaty between the United States and Mexico.

Petition, pp. 5–10.

Respondent Michelle Smith ("Respondent") opposed the Petition, asserting that (1) Petitioner's state law claims relating to sentencing, <u>Scales</u>, and the double jeopardy clause of the Minnesota Constitution are not cognizable in a federal habeas corpus action; (2) Petitioner did not exhaust his state court remedies with respect to his federal double jeopardy and self-incrimination claims, and therefore the claims are now procedurally barred; (3) Petitioner's extradition claim is collaterally estopped and, in any

---

[5]     Petitioner stated in his habeas Petition that he had filed a petition for certiorari in the United States Supreme Court, which he indicated was "pending."   Petition, p. 3. However, Petitioner did not provide the case number or date of filing.   Based on a search of the Supreme Court's database and inquiry to and response from Respondent [Docket Nos. 14, 15], the Court concludes that no petition was filed.

event, denial of this claim by the state court is neither contrary to established federal law as determined by the United States Supreme Court, nor an unreasonable application of a United States Supreme Court decision.  Answer, ¶¶ 3, 7, 8, 11, 12, 17, 21-24, 27, 31, 33 [Docket No. 4]; Respondent's Memorandum in Opposition to Petition for Writ of Habeas Corpus ("Resp.'s Mem."), pp. 4-16 [Docket No. 5].

In reply, Petitioner further addressed his extradition claim by contending that there was no evidence that he committed any acts in Minnesota.  Petitioner's Replay [sic] ("Pet.'s Reply"), p. 3 [Docket No. 9].[6]  In addition, Petitioner argued that he was being punished in Minnesota for an offense other than the offense for which he was extradited in violation of the doctrine of specialty.  Id., p. 6.  Petitioner also maintained that he had raised his double jeopardy claim in his second omnibus motion.  Id., p. 12. Petitioner then asserted two new claims: (1) his rights to Equal Protection and Due Process under the United States Constitution were denied by Respondent; and (2) his counsel was ineffective in his performance to conduct reasonable investigations and to make reasonable decisions.  Id., p. 15.

As for Respondent's argument that he had failed to exhaust his state remedies, Petitioner submitted that the exhaustion requirement was not absolute and that he need not exhaust state remedies because special circumstances were present to excuse his failure to exhaust.[7]  Id., p. 16 (citing Granberry v. Greer, 471 U.S. 129, 131 (1987)

---

[6]     The Court is referencing the page numbers assigned by the Court's electronic filing system, rather than as numbered by Petitioner.

[7]     Later in his Reply, Petitioner suggested that if he did not present federal claims to the state courts, it "may be attributable to the Public Defender's System."  Pet.'s Reply, p. 20 (citing Vermont v. Brillon, 129 S. Ct. 1283, 1291-92 (2009); Strickland, 446 U.S. at 691).  He also maintained that he "has made a continual good faith effort to

(citing <u>Strickland v Washington</u>, 446 U.S. 668, 689 (1984)); <u>Frisbie v. Collins</u>, 342 U.S. 519, 521-22 (1952)).  Finally, Petitioner asserted that the reversal of his Iowa conviction collaterally estopped Minnesota from prosecuting him.  <u>Id.</u>, pp. 17-20.

## II.  DISCUSSION

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs a federal court's review of habeas corpus petitions filed by state prisoners.  AEDPA provides that a district court may entertain a habeas petition submitted by a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

Section 2254 provides that a habeas corpus petition

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Here, while Petitioner did not state whether he was proceeding under 28 U.S.C. § 2254(d)(1) or (2), the substance of his Petition indicates that he is raising challenges under both sections of Section 2254(d).

The Eighth Circuit described review under § 2254(d)(1) as follows:

> A decision is "contrary to" federal law "if the state court arrives at a conclusion opposite to that reached by [the

bring his petition before the proper forum and he faced roadblocks at every turn."  <u>Id.</u> (quoting <u>Chitwood v. Dowd</u>, 889 F.2d 781, 785 (8th Cir. 1989)).

> Supreme] Court on a question of law' or if it 'confront[ed] facts that are materially indistinguishable from a relevant Supreme Court precedent" but arrived at an opposite result. Williams v. Taylor, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).  A state court "unreasonably applies" federal law when it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407.
>
> A federal court may not issue the writ simply because it "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.

Engesser v. Dooley, 457 F.3d 731, 735-36 (8th Cir. 2006), cert. denied, 549 U.S. 1223 (2007).  Under this standard, federal courts "must deny a writ—even if [they] disagree with the state court's decision—so long as that decision is reasonable in view of all the circumstances."  May v. Iowa, 251 F.3d 713, 716 (8th Cir. 2001) (citing Williams, 529 U.S. at 409-13).

By its terms, §2254(d)(1) "limits the benchmark precedent against which a habeas court may measure a state court decision . . . ."  O'Brien v. Dubois, 145 F.3d 16, 20 (1st Cir. 1999), overruled on other grounds by McCambridge v. Hall, 303 F.3d 24 (1st Cir. 2002); see also Lo v. Comm'r of Corr. of Minn., Civ. No. 07-4602 (JRT/JSM), 2009 WL 102683, at *5 (D. Minn. Jan. 14 2009) (same).  Even if lower federal court decisions support a petitioner's position, "the writ cannot issue unless the state court decision contravenes, or involves an unreasonable application of, extant Supreme Court jurisprudence."  O'Brien, 145 F.3d at 20 (citations omitted). Nevertheless, "[t]o the extent that 'inferior' federal courts have decided factually similar

cases, reference to those decisions is appropriate in assessing the reasonableness of the state court's resolution of the disputed issue." Atley v. Ault, 191 F.3d 865, 872 (8th Cir. 1999) (citing O'Brien, 145 F.3d at 25); see also Engesser, 457 F.3d at 736-37 (same).

Under §2254(d)(2), a state court decision involves "an unreasonable determination of the facts in light of the evidence presented in state court proceedings," only if it is shown that the state court's presumptively correct factual findings are not supported by the record. 28 U.S.C. § 2254(e)(1). Pursuant to § 2254(e)(1):

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1); see also Lee v. Gammon, 222 F.3d 441, 442 (8th Cir. 2000).

## A. Non-Federal Claims

Petitioner raises three claims based in part on violations of the Minnesota Constitution and Minnesota law:

- Trial and conviction of Petitioner in Minnesota was a violation of the Double Jeopardy Clause of the Minnesota and Federal Constitutions (Ground One);

- Admission of unrecorded testimony was a violation of Scales and the Minnesota and Federal Constitutions (Ground Two); and

- Imposition of consecutive sentences and a durational departure without a finding of severe aggravating factors was in error (Ground Three).

To the extent Grounds One and Two expressly assert violations of Minnesota law, the Court finds that they are not cognizable in a federal habeas corpus proceeding.

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, law or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67 (1991); see also Wainwright v. Goode, 464 U.S. 78, 83 (1983) (per curiam) ("It is axiomatic that federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension"); 28 U.S.C. § 2254(a) ("[A] district court shall entertain an application for a writ of habeas corpus . . . only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."). Accordingly, this Court will consider Grounds One and Two under federal law only.

With respect to Ground Three, Petitioner did not specify what statute, case law, or constitutional provision was violated when he received consecutive and enhanced sentences. Although the Court is not required to construct a legal theory on Petitioner's behalf, see Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004), the Court assumes that Petitioner is raising the same legal arguments he made on direct appeal. There, Petitioner challenged his sentence under the Minnesota Sentencing Guidelines and Minnesota case law. See Appendix, pp. 47-51 (Appellant's Brief in Minnesota Court of Appeals); 332-33, 338-339 (Petition for Review to Minnesota Supreme Court). Petitioner referenced no federal law or constitutional provision in his brief. For that reason, the Court finds that Ground Three does not state a federal claim and should be dismissed.[8]

---

[8]     Even if the Court were wrong about its assumption that Ground Three was premised on state law, it would find that Petitioner had failed to exhaust and is procedurally barred from raising any potential federal claim regarding his consecutive and enhanced sentences for the same reasons it has reached that conclusion with respect to Grounds One and Two.

B.      **Exhaustion and Procedural Default**

The Court now discusses the issues of exhaustion and procedural default as they relate to Petitioner's federal double jeopardy claim (Ground One) and Scales claim (Ground Two).

It is well established that a federal court cannot entertain a petition for a writ of habeas corpus on behalf of a state prisoner unless the prisoner has first exhausted all available state-court remedies as to each of his claims.   28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State"); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); Rose v. Lundy, 455 U.S. 509 (1982). A federal claim is deemed to be unexhausted if the claim has not been fairly presented in one complete round of the state's established appellate review process, O'Sullivan, 526 U.S. at 845, but the petitioner still has a right to raise the claim by any available state procedure.  See 28 U.S.C. § 2254(c).[9]  This requirement is based on principles of comity and federalism; its purpose is to ensure that state courts are given the first opportunity to correct alleged federal constitutional errors raised by state prisoners. O'Sullivan, 526 U.S. at 842; Duncan v. Henry, 513 U.S. 364, 365-66 (1995) (per curiam); Smittie v. Lockhart, 843 F.2d 295, 298 (8th Cir. 1988).[10]

---

[9]     28 U.S.C. § 2254(c) states: "An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."

[10]    Petitioner contended that any failure to exhaust state remedies should be excused because "(1) the failure to exhaust state remedies does not deprive [a federal

court] of jurisdiction to concider [sic] the merits of a habeas corpus application, (2) the general rule of exhaustion is NOT rigid and inflexible, (3) [and] the exhaustion doctrine have [sic] recognized nonstatutory exceptions to the exhaustion requirement is [sic] special circumstances."  Pet.'s Reply, p. 14.  Petitioner cited Granberry v. Greer, 481 U.S. 129, 131 (1987), and Frisbie v. Collins, 342 U.S. 519, 521-22 (1952), in support of his arguments.  Petitioner's reliance on those cases, however, is misplaced.

Granberry held that a federal court may, in some cases, decide the substance of a habeas petition notwithstanding a petitioner's failure to exhaust state remedies. 481 U.S. at 131.  The Granberry rule permits a federal court to "determine whether the interests of comity and federalism will be better served by addressing the merits forthwith or by requiring a series of additional state and district court proceedings before reviewing the merits of the petitioner's claim."  Id. at 134.

> If, for example, the case presents an issue on which an unresolved question of fact or of state law might have an important bearing, both comity and judicial efficiency may make it appropriate for the court to insist on complete exhaustion to make sure that it may ultimately review the issue on a fully informed basis. On the other hand, if it is perfectly clear that the applicant does not raise even a colorable federal claim, the interests of the petitioner, the warden, the state attorney general, the state courts, and the federal courts will all be well served even if the State fails to raise the exhaustion defense, the district court denies the habeas petition, and the court of appeals affirms the judgment of the district court forthwith.

Id. at 134-35 (citation omitted).  In short, the Granberry rule allows a federal court to ignore the exhaustion requirement if doing so would respect the interests of the state. In this case, however, the Granberry rule does not apply.

First, the Granberry exception "relates only to the special circumstance of the prosecution never having raised the exhaustion defense . . . ."  Lambert v. Blackwell, 134 F.3d 506, 515 (3d Cir. 1997).  In all other cases, "there is a strong presumption in favor of requiring the prisoner to pursue his available state remedies . . . ."  Granberry, 481 U.S. at 131; see also 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in [state] custody . . . shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State . . . .").  Here, because Respondent has raised the exhaustion defense, Granberry has no application.

Second, the AEDPA has greatly limited the Granberry exception.  Under AEDPA, "a state will no longer be found to have waived the defense of nonexhaustion unless it does so expressly and through counsel."  Rockwell v. Yukins, 217 F.3d 421, 423-24 (6th Cir. 2000) (citing 28 U.S.C. § 2254(b)(3)); see also Demarest v. Price,

"To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (citations omitted); see also Turnage v. Fabian, 606 F.3d 933, 936 (8th Cir. 2010) ("The onus rests on the prisoner to present the substance of his federal claims 'in each appropriate state court (including a state supreme court with powers of discretionary review).'") (quoting Baldwin, 541 U.S. at 29). In order to fairly present a federal claim to the state courts, "[i]t is not enough that all the facts necessary to support a federal claim are before the state court or that the petitioner asserted a similar state-law claim." Ashker v. Leapley, 5 F.3d 1178, 1179 (8th Cir. 1993) (quoting Tyler v. Wyrick, 730 F.2d 1209, 1210 (8th Cir. 1984) (per curiam), cert. denied, 469 U.S. 838 (1984)); see also Turnage, 606 F.3d at 936 ("'[m]ere similarity between . . . state law claims and . . . federal habeas claims is insufficient' to satisfy the fair presentation requirement.") (quoting

---

130 F.3d 922, 934 n. 5 (10th Cir. 1997) ("AEDPA amendments to 28 U.S.C. § 2254 change the Granberry rule with regard to cases filed after April 24, 1996. Under the amended version of § 2254(b)(3), 'A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waive the requirement.") (citation omitted). In this case, since Respondent has expressly raised the exhaustion issue, "[AEDPA] imposes a duty on [this Court] to examine the exhaustion issue and to reject [the] petition if it raises unexhausted claims." Lambert, 134 F.3d at 515.

Third, even if the "special circumstances" exception set forth in Granberry and Frisbie were available in this case, the Eighth Circuit has held that this exception applies only "'in rare cases where exceptional circumstances of peculiar urgency are shown to exist.'" Mellott v. Purkett, 63 F.3d 781, 785 (8th Cir. 1995) (quoting Granberry, 481 U.S. at 131). "Such circumstances exist when, for example, state remedies are inadequate or fail to 'afford a full and fair adjudication of the federal contentions raised.'" Victor v. Hopkins, 90 F.3d 276, 279-80 (8th Cir. 1996) (quoting Ex parte Hawk, 321 U.S. 114, 118 (1944)). In this case, Petitioner has not demonstrated any "special circumstances" to allow him to bypass the exhaustion requirement.

Carney v. Fabian, 487 F.3d 1094, 1097 (8th Cir. 2007) (alteration in original)).  Rather, "the petitioner must have referred to 'a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue' in a claim before the state courts."  Murphy v. King, 652 F.3d 845, 849 (8th Cir. 2011) (quoting McCall v. Benson, 114 F.3d 754, 757 (8th Cir. 1997)); see also McCall, 114 F.3d at 757 ("Mere similarity between the state law claims and the federal habeas claims is insufficient: 'If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution.'") (quoting Henry, 513 U.S. at 365-66).

"Ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  Baldwin, 541 U.S. at 32.  However, even if the opinion of the state court of appeals does not make any mention of a federal claim, a brief submitted to that court that sets forth the federal constitutional basis for a claim can satisfy the requirement that the petitioner "apprise the state court of his claim that the . . . ruling of which he complained was not only a violation of state law, but denied him [rights] guaranteed by the [federal constitution]."  Dye v. Hofbauer, 546 U.S. 1, 4 (2005) (quoting Henry, 513 U.S. at 366).

Generally, "[w]hen a state court remedy is available for a state prisoner's unexhausted claim, the federal habeas court must defer action until the claim is exhausted, either by dismissing the federal petition without prejudice or by using the

'stay and abeyance' procedure described in Rhines v. Weber, [544 U.S. 269]... (2005)."
Armstrong v. Iowa, 418 F.3d 924, 926 (8th Cir. 2005), cert. denied, 546 U.S. 1179
(2006).   However, when a prisoner has not exhausted his state court remedies for a
particular claim, and state procedural rules preclude any further consideration of that
claim, then the claim has been procedurally defaulted.   Coleman v. Thompson,
501 U.S. 722, 750 (1991); see also O'Sullivan, 526 U.S. at 848 (holding that petitioner's
failure to timely present federal claims to the state high court resulted in a procedural
default); Turnage, 606 F.3d at 936 ("If a prisoner fails to present his federal claims to the
state courts, those claims are generally considered procedurally defaulted.") (quoting
Barrett v. Acevedo, 169 F.3d 1155, 1161 (8th Cir. 1999) (en banc)).   In other words, if
there is still a state court remedy available, a previously unraised habeas claim is
"unexhausted," but if there is no state court remedy still available, then the claim is
"procedurally defaulted."   See Armstrong, 418 F.3d at 926 ("[I]f no state court remedy is
available for the unexhausted claim – that is, if resort to the state courts would be futile –
then the exhaustion requirement in § 2254(b) is satisfied, but the failure to exhaust
'provides an independent and adequate state-law ground for the conviction and
sentence, and thus prevents federal habeas corpus review of the defaulted claim. . . .'")
(quoting Gray v. Netherland, 518 U.S. 152, 162 (1996)); see also Middleton v. Roper,
455 F.3d 838, 855 (8th Cir. 2006), cert. denied, 549 U.S. 1134 (2007) ("'If a prisoner
has not presented his habeas claims to the state court, the claims are defaulted if a
state procedural rule precludes him from raising the issues now.'") (quoting
Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir.) (en banc), cert. denied, 517 U.S. 1215
(1996)).

A claim that has been procedurally defaulted will not be addressed on the merits unless the petitioner has shown "cause and prejudice" to excuse his procedural default, or, in the alternative, that a "fundamental miscarriage of justice" would result if the federal court declined to consider the claim. <u>Coleman</u>, 501 U.S. at 750; <u>see also</u> <u>Clemons v. Luebbers</u>, 381 F.3d 744, 750 (8th Cir. 2004) ("A federal district court is precluded from substantively considering a habeas corpus claim that a state court has disposed of on independent and adequate non-federal grounds, including state procedural grounds.") (citation omitted).

"'Cause' . . . must be something <u>external</u> to the petitioner, something that cannot fairly be attributed to him. . . . For example, 'a showing that the factual or legal basis for a claim was not reasonably available to counsel . . . or that 'some interference by officials' . . . made compliance impracticable . . . .'" <u>Coleman</u>, 501 U.S. at 753 (emphasis in original) (quoting <u>Murray v. Carrier</u>, 477 U.S. 478, 488). "Prejudice" that will overcome a procedural default requires a showing by a petitioner "not merely that the errors at his trial created a <u>possibility</u> of prejudice, but that they worked to his <u>actual</u> and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." <u>Armstrong v. Kemna</u>, 590 F.3d 592, 606 (8th Cir. 2010) (emphasis in original) (quoting <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982), <u>cert. denied</u>, 560 U.S. 945 (2010)). A court need not determine the "cause" issue if it first determines that the petitioner has not made a showing of prejudice. <u>Id.</u> at 606 n. 12.

The "fundamental miscarriage of justice" exception is available only upon a "showing, based on new evidence, that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" <u>Brownlow v. Groose</u>, 66 F.3d 997,

999 (8th Cir. 1995) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)), cert. denied, 516 U.S. 1161 (1996).  In other words, a petitioner cannot simply point to errors that allegedly occurred during the course of his state criminal proceeding; he must instead offer some new evidence which affirmatively demonstrates that he is, in fact, innocent of the crime for which he was convicted.[11]

If a petitioner is unable to show cause and prejudice, or a fundamental miscarriage of justice, the procedural default cannot be excused, and the court will deny the claim without addressing its merits.  See Carney v. Fabian, 441 F. Supp. 2d 1014, 1029 (D. Minn. 2006).

Applying these principles to the present case, the Court finds that Petitioner did not fairly present the federal nature of Grounds One and Two in state court.  With respect to Ground One, Petitioner twice admitted on direct review that there was no violation of the federal double jeopardy clause.  Appendix, p. 28 (Appellant's Brief to Minnesota Court of Appeals); Appendix, p. 440 (Appellant's Brief to Minnesota Supreme

---

[11]     The actual innocence exception is concerned with claims of actual, not legal innocence.  It is evidence of factual innocence coupled with a constitutional violation which triggers the actual innocence exception.  Indeed, a credible claim of actual innocence requires [a] petitioner to support his allegation of constitutional error with new reliable evidence . . . .  Examples of evidence which may establish factual innocence include credible declarations of guilt by another, trustworthy eyewitness accounts, and exculpatory scientific evidence.

Pitts v. Norris, 85 F.3d 348, 350-51 (8th Cir.) (internal citations and marks omitted), cert. denied, 519 U.S. 972 (1996).  For purposes of showing actual innocence, "'evidence is new only if it was not available at trial and could not have been discovered earlier through the exercise of due diligence.'" Johnson v. Norris, 170 F.3d 816, 817 (8th Cir. 1999) (quoting Armine v. Bowersox, 128 F.3d 1222, 1230 (8th Cir. 1997) (en banc), cert. denied, 523 U.S. 1123 (1998)).

Court).  Minnesota courts therefore lacked a "fair opportunity" to consider that claim on the merits.  Indeed, it would undermine the purpose of the exhaustion requirement if a habeas petitioner could concede a claim on direct appeal—and thereby avoid state consideration—then attempt to resurrect it in federal court.  See Picard v. Connor, 404 U.S. 270, 276, (1971) ("The [exhaustion] rule would serve no purpose if it could be satisfied by raising one claim in the state courts and another in the federal courts."); see also Sanders v. United States, 474 U.S. 1, 18 (1963) ("[I]f a prisoner deliberately withholds one of two grounds for federal collateral relief at the time of filing his first application . . . he may be deemed to have waived . . . the withheld ground. . . . Nothing in the traditions of habeas corpus requires the federal courts to tolerate needless piecemeal litigation . . . ."); Doe v. Jones, 762 F.3d 1174, 1177 (10th Cir. 2014) ("In deciding to require total exhaustion, the Court wanted to thwart prisoners intentionally withholding grounds for habeas relief 'in the hope of being granted two hearings rather than one.'") (quoting Lundy, 455 U.S. at 521).

It is true that, in Castillo-Alvarez II, the Minnesota Supreme Court analyzed the federal double jeopardy clause and related case law, even though Petitioner did not raise the issue himself.  In some cases, sua sponte consideration of a federal claim can satisfy the exhaustion requirement.  See Johnson v. Cain, 712 F.3d 227, 231 (5th Cir. 2013) ("The exhaustion requirement is satisfied . . . if the federal claim is not fairly presented but the state court addresses it sua sponte) (citation omitted); see also Rodrigues v. Gudeman, 794 F.2d 1458, 1460 (9th Cir. 1986) ("Even though [petitioner] did not raise the double jeopardy issue, the Hawaii Supreme Court had a fair opportunity to apply controlling legal principles to the facts bearing upon his

constitutional claim and had the substance of [the] federal habeas corpus claim before it.") (alteration in original) (citation and internal quotation marks omitted).  In this case, however, the purpose of the Minnesota Supreme Court's analysis was not to decide whether a violation of the federal double jeopardy clause occurred; rather, the court sought to determine whether it "should construe the Double Jeopardy Clause of the Minnesota Constitution to offer greater protection than the federal constitution." Castillo-Alvarez II, 836 N.W.2d at 534.  To make that determination, the court had to consider whether "'the United States Supreme Court ha[d] made a sharp or radical departure from its previous decisions or approach to the law . . . .'"  Id. at 535 (quotation omitted).  As such, the Minnesota Supreme Court's examination of federal law had no bearing on Petitioner's present challenge, and therefore the exhaustion requirement has not been met.

With respect to Ground Two (the alleged Scales violation), none of Petitioner's filings in the Minnesota Supreme Court—the Petition for Review, Appellate Brief, or Reply—contain any reference to federal constitutional law.  See Appendix, pp. 332, 335-36 (Petition for Review to Minnesota Supreme Court), pp. 449-469 (Appellant's Brief in Minnesota Supreme Court); pp. 642-46 (Appellant's Reply Brief).[12]

---

[12]   The only exception is one paragraph in Petitioner's appellate brief to the Minnesota Supreme Court:

> The Scales rule was designed to protect criminal defendants' constitutional rights to counsel, against self-incrimination, and to a fair trial, Scales, 518 N.W.2d at 592, and therefore a violation of that rule has constitutional dimension. Compare Dickerson v. United States, 530 U.S. 428, 438-44 (2000) (holding that Miranda warnings, which are designed to protect suspects' constitutional rights, were themselves constitutionally based).   Accordingly, the constitutional

Accordingly, Petitioner failed to properly present the federal basis for Ground Two in state court.

The Court also finds that Grounds One and Two have been procedurally defaulted.  Petitioner has already appealed his conviction to both the Minnesota Court of Appeals and the Minnesota Supreme Court.  Thus, it is now too late for him to present his federal claims on direct review.  In addition, Petitioner has forfeited his right to state collateral review via a petition for postconviction relief.  Under Minnesota law, "[a] petition for postconviction relief after a direct appeal has been completed may not be based on grounds that could have been raised on direct appeal of the conviction or sentence."   Minn. Stat. § 590.01 subd. 1.   Additionally, "'when a petition for postconviction relief follows a direct appeal of a conviction, all claims raised in the direct appeal and all claims of which the defendant knew or should have known at the time of the direct appeal are procedurally barred.'"   Hooper v. State, 838 N.W.2d 775, 787 (Minn. 2013) (quoting Buckingham v. State, 799 N.W.2d 229, 231 (Minn. 2011)); see also Maxwell v. Gau, Civ. No. 12-1770 (ADM/TNL), 2014 WL 1371912, at *10

---

harmless-error standard should apply.  See Scales v. State, 620 N.W. 2d 706, 708 (Minn. 2001) (Scales II) (a Scales error may be dismissed as harmless where verdict was "'surely unattributable' to the error.") (quoting, inter alia, State v Juarez, 572 N.W. 2d 286, 292 (Minn. 2001)).

Appendix, p. 466 (Appellant's Brief in Minnesota Supreme Court).  This passing reference to "constitutional rights" was insufficient to alert the Minnesota Supreme Court that Petitioner was asserting a federal claim.  See Adams v. Robertson, 520 U.S. 83, 89 n. 3 (1997) ("[P]assing invocations of 'due process' . . . [that] fail to cite the Federal Constitution or any cases relying on [it] . . . [do] not meet our minimal requirement that it must be clear that a federal claim was presented.") (emphasis in original) (citations omitted).  And although Petitioner cited to Dickerson, it is clear in this context that he was addressing the issue of harmless error and was not raising a separate claim.

(D. Minn. Apr. 8, 2014) ("The State of Minnesota has a well-established procedural rule that prevents state prisoners from seeking post-conviction relief based on claims that could have been raised in direct appeal.") (citing State v. Knaffla, 243 N.W.2d 737 (Minn. 1976)).   This rule, called the Knaffla Rule, is well-settled Minnesota law. Powers v. State, 731 N.W.2d 499, 501 (Minn. 2007).   Claims that are "known" include those available after trial that could have been raised on direct appeal.   See Townsend v. State, 723 N.W.2d 14, 18 (Minn. 2006) (citation omitted).   Since Petitioner could have raised the federal basis for Grounds One and Two on direct appeal, but failed to do so, postconviction review of those claims is barred.   Therefore, the Court concludes that Grounds One and Two are procedurally defaulted.

The only remaining issue to consider is whether Petitioner has shown cause and prejudice, or actual innocence, to excuse his procedural default.   Where, as here, Petitioner has offered no evidence to show cause, prejudice, or actual innocence, the Court recommends dismissal of Grounds One and Two without addressing their merits.

### C.   Extradition Treaty and the Rule of Specialty

Petitioner's final challenge, set forth in Ground Four, is premised on the Extradition Treaty between the United States and Mexico.   As an initial matter, Respondent argued that this claim is barred by collateral estoppel because Petitioner previously litigated the extradition issue in a habeas corpus proceeding in Iowa.   Resp.'s Mem., p. 9.   Respondent noted that, when Petitioner raised his extradition challenge on direct appeal, the Minnesota Court of Appeals held:

> Because the Iowa Court considered and rejected [Petitioner's] argument, and because [Petitioner] had a full and fair opportunity to litigate the issue in the Iowa

> proceeding, this challenge is precluded on the basis of
> collateral estoppel.

Id. (quoting Castillo-Alvarez I, 820 N.W.2d at 625-26).   According to Respondent,

Petitioner did not challenge the Minnesota Court of Appeal's decision that his extradition

claim was collaterally estopped, and thus he has now waived any such claim.[13]  Id.,

pp. 9-10.  However, even if Petitioner had challenged the collateral estoppel holding of

the Minnesota Court of Appeals, that holding was correct.  Id., p. 10.

"Collateral estoppel, sometimes referred to as issue preclusion, precludes parties

from relitigating issues which are identical to issues previously litigated and which were

necessary and essential to the former resulting judgment." Aufderhar v. Data Dispatch,

Inc., 452 N.W.2d 648, 650 (Minn. 1990) (citing Ellis v. Minneapolis Comm'n on Civil

Rights, 319 N.W.2d 702, 703 (Minn. 1982)).  However, "[a]s the United States Supreme

Court has often noted, ordinary principles of res judicata and collateral estoppel do not

strictly apply in the federal habeas context."  Rehbein v. Clarke, 94 F.3d 478, 481

(8th Cir. 1996) (citing Sanders v. United States, 373 U.S. 1, 7–8 (1963)); see also

Greenlaw v. Smith, 972 F.2d 353 (8th Cir. 1992) ("Collateral estoppel is no bar to a

federal habeas action.") (citing Gross, 957 F.2d at 533); see also McCleskey v. Zant,

499 U.S. 467, 480 (1991) ("[R]es judicata does not apply 'to a decision on habeas

corpus refusing to discharge the prisoner.") (citations omitted).  "The entire point of a

habeas petition that challenges a state conviction is to relitigate issues that were raised

---

[13]     Respondent's assertion is incorrect.  In his Petition for Review to the Minnesota
Supreme Court, Petitioner did challenge the appellate court's determination that he was
collaterally estopped by the Iowa Court's decision that he could be lawfully extradited to
Minnesota.  Appendix, p. 337 (Petition for Review of Decision of Court of Appeals).
The Minnesota Supreme Court refused to consider this issue.  Appendix, p. 411
(Order Granting Review in Minnesota Supreme Court).

in the state case and resolved against the petitioner." Calderon v. U.S. Dist. Court, 163 F.3d 530, 537 (9th Cir. 1998) (citing Wainwright v. Sykes, 433 U.S. 72, 87 (1977)), abrogated on other grounds by Woodford v. Garceau, 538 U.S. 202 (2003). Instead, federal courts apply the "abuse of the writ" doctrine, which limits a prisoner's ability to file successive habeas petitions.[14] McCleskey, 499 U.S. at 479-88. Accordingly, the Minnesota appellate court ruling on collateral estoppel does not bar Petitioner's federal habeas challenge.

The Court now turns to the merits of Petitioner's extradition challenge. Petitioner contended that the rule of specialty was violated because his extradition was based on charges filed by Iowa, not Minnesota. Pet.'s Reply, p. 6. In Petitioner's view, Minnesota was not permitted to prosecute him unless it had obtained explicit consent from Mexico. Id. The Court finds otherwise.

"Under the doctrine of specialty[15] a defendant may be tried only for the offense for which he was delivered up by the asylum country." United States v. Thirion, 813 F.2d 146, 151 (8th Cir. 1987) (citing United States v. Rauscher, 119 U.S. 407, 422-23 (1886)). "The basic rationale for the rule is comity and the desire to 'prevent the United States from violating international agreements....'" United States v. Jetter, 722 F.2d 371, 373 (8th Cir. 1983) (quoting Fiocconi v. Attorney General of United

---

[14] Respondent has not alleged that the present habeas Petition constitutes an abuse of the writ. The Court notes, however, that the abuse-of-the-writ doctrine does not apply here because Petitioner has not filed a second or successive § 2254 petition. Petitioner's previous § 2254 petition was dismissed without prejudice because it contained unexhausted claims. See Hawkinson, 2011 WL 3759828. When a petitioner returns to federal court after exhausting available state-court remedies, the later petition is not considered "second or successive." Burton v. Stewart, 549 U.S. 147, 154 (2007). Therefore, neither collateral estoppel nor abuse-of-the-writ doctrine prohibit this Court's consideration of Petitioner's extradition claim.

[15] In some courts, the rule of specialty is referred to as the rule of "speciality."

States, 462 F.2d 475, 480 (2d Cir.) (opinion of Friendly, C.J.), cert. denied, 409 U.S. 1059 (1972).  The rule is "'designed to guarantee the surrendering nation that the extradited individual will not be subject to indiscriminate prosecution by the receiving government.'"  United States v. Lomeli, 596 F.3d 496, 500-01 (8th Cir. 2010) (quoting Leighnor v. Turner, 884 F.2d 385, 389 (8th Cir. 1989)); see also Thirion, 813 F.2d at 153 ("The doctrine of speciality 'reflects a fundamental concern of governments that persons who are surrendered should not be subject to indiscriminate prosecution by the receiving government....'") (quoting Fiocconi, 462 F.2d at 481).

"[An] extraditee's standing to assert the specialty principle is only derivative; the extraditee may object only to breaches to which the surrendering country would have been entitled to object."  Leighnor, 884 F.2d at 389 (citations omitted).  Thus, the key inquiry is "whether the surrendering state would regard the prosecution at issue as a breach."  Jetter, 722 F.2d at 373 (citations omitted).

In this case, it is highly unlikely that Mexico would consider Petitioner's prosecution in Minnesota to be a breach of the Extradition Treaty.  Article 17 of the U.S.-Mexico Extradition Treaty provides:

> 1.- A person extradited under the present Treaty shall not be detained, tried or punished in the territory of the requesting Party for an offense other than that for which extradition has been granted nor be extradited by that Party to a third State unless:
>
> a) He has left the territory of the requesting Party after his extradition and has voluntarily returned to it;
>
> b) He has not left the territory of the requesting Party within 60 days after being free to do so; or
>
> c) The requested Party has given its consent to his detention, trial, punishment or extradition to a third

State for an offense other than that for which the extradition was granted.

These stipulations shall not apply to offenses committed after the extradition.

2.- If, in the course of the procedure, the classification of the offense is changed for which the person requested was extradited, he shall be tried and sentenced on the condition that the offense, in its new legal form:

    a) Is based on the same group of facts established in the request for extradition and in the documents presented in its support; and

    b) Is punishable with the same maximum sentence as the crime for which he was extradited or with a lesser sentence.

U.S.-Mexico Extradition Treaty, T.I.A.S. No. 9656, 31 U.S.T. 5059 (Jan. 25, 1980). Subdivision 2 is particularly applicable to this case, as it sets forth the conditions for prosecution of an extraditee on new charges. Based on the provisions of subdivision 2, and the principles of the doctrine of specialty, it is clear that Mexico would not have objected to Petitioner's trial and conviction in Minnesota.

First, the offenses charged by Minnesota were based on the same set of facts for which the original extradition was requested. Petitioner was initially extradited to Iowa for the June, 1997 kidnapping and murder of Erickson. After his Iowa conviction was vacated on speedy-trial grounds, Petitioner was prosecuted for the kidnapping and murder of Erickson in Minnesota. This was not "indiscriminate prosecution" for conduct not contemplated by the extradition agreement. Rather, Petitioner was tried in Minnesota for the very same offenses and conduct for which he was originally extradited. See Thirion, 813 F.2d at 153 ("Neither Thirion nor Monaco should be heard to complain because Thirion was tried only for those crimes for which he was

extradited."); Fiocconi, 462 F.2d at 481 ("[I]n the absence of any affirmative protest from Italy, we do not believe that Government would regard the prosecution of [petitioners] for subsequent offenses of the same character as the crime for which they were extradited as a breach of faith by the United States."). Petitioner's trial in Minnesota was fully consistent with subdivision 2(a), and therefore Mexico could not reasonably claim that the Extradition Treaty was violated.

Second, the offenses charged by Minnesota were punishable by a lesser maximum sentence as the offenses for which Petitioner was originally extradited. In Iowa, second-degree murder carries a maximum penalty of not more than 50 years of imprisonment. Iowa Stat. § 707.3(2). In Minnesota, the penalty for second-degree murder is not more than 40 years of imprisonment. § 609.19, subd. 2.[16]

For these reasons, the Court finds that the U.S.-Mexico Extradition Treaty was not violated, and Mexico had no grounds to object to Petitioner's trial in Minnesota.

The Jackson County District Court similarly found that the Extradition Treaty was not violated when it denied Petitioner's motion to dismiss.[17] The court explained its decision as follows:

---

[16]    The Court acknowledges that Petitioner was also tried and convicted for kidnapping, which carries a greater maximum sentence in Minnesota than in Iowa. See Iowa Stat. § 710.3(2); 707.3(d); Minn. Stat. § 609.25, subd. 2(2). However, because the most serious charge against Petitioner was for second-degree murder, and because Petitioner received only a 48-month sentence for kidnapping, the Court finds that Mexico would not have objected to Petitioner's trial on the kidnapping charge.

[17]    In conducting § 2254(d) analysis, federal courts typically examine highest state court decision on the issue in question. However, "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991). Habeas courts must "look through" these unexplained orders to the last fully reasoned decision. Id. at 804. In this case, the last reasoned decision on the merits of the extradition issue was by the Jackson

The rule of specialty "is based on principles of international comity and is designed to guarantee the surrendering nation that the extradited individual will not be subject to indiscriminate prosecution by the receiving government." United States v. Lomeli, 596 F.3d 496, 501 (8th Cir. 2010) (citing Leighnor v. Turner, 884 F.2d 385, 389 (8th Cir. 1989)).  In general, the rule of specialty provides that a defendant may be tried only for the offense for which he was delivered up by the asylum country.  Lomeli, 596 F.3d at 500 (citing United States v. Thirion, 813 F.2d 146, 151 (8th Cir. 1987)).  The charges must be based on the same set of facts as those set forth in the extradition request.  United States v. Sensi, 879 F.2d 888, 895 (D.C. Cir 1989) (citing Restatement 3d of Foreign Relations Law of the United States, Sec. 477, comment a).  The test whether trial is for a 'separate offense' than that for which extradition has been granted should be not some technical refinement of local law, but whether the extraditing country would consider the offense actually tried 'separate.'  See Fiocconi v. Attorney General, 462 F.2d 475, 481 (2[d] Cir. 1972) (citing United States v. Paroutian, 299 F.2d 486, 490-491 (C.A.N.Y. 1962)).

The protection of the doctrine of specialty exists only to the extent the surrendering country wishes.  See United States v. Lazarevich, 147 F.3d 1061, 1063 (9th Cir. 1998) (citations omitted).  The defendant may raise whatever objection the surrendering country might raise, but only to the extent of the surrendering country's wishes; the primary concern of international law is satisfaction of the requesting country's obligations to the requested country.  See United States v. Jurado-Rodriguez, 907 F. Supp. 568, 576 (E.D.N.Y. 1995) (citing United States v. Riviere, 924 F.2d 1289, 1299 (11th Cir.)).

[Petitioner] was extradited to the United States upon the demand of the State of Iowa to stand trial on second degree murder and other charges arising from the kidnapping and murder of [Gregory Sky Erickson], not upon the demand of the State of Minnesota.  The State of Minnesota is now

---

County District Court.  The Minnesota Court of Appeals affirmed the state trial court's order on collateral estoppel grounds without considering the merits of Petitioner's claim, Castillo-Alvarez I, 820 N.W.2d at 625-26, and the Minnesota Supreme Court denied review of the issue.  Accordingly, this Court applies § 2254(d) analysis to the decision of the Jackson County District Court.

> prosecuting these offenses because [Petitioner's] conviction in Iowa was overturned on procedural grounds. The crimes with which [Petitioner] is charged in Minnesota arise from the same set of facts as the crimes for which he was extradited from Mexico. In both Iowa and Minnesota, the crime of second degree murder carries a greater penalty than other offenses [Petitioner] was charged with. . . . Both subdivision 2(a) and 2(b) of the Extradition Treaty are satisfied. The rule of specialty does not bar prosecution in the State of Minnesota, because Minnesota's Complaint is based on the same facts and circumstances presented to Mexico for extradition, and carries a lesser maximum sentence than the Iowa crimes presented to Mexico for extradition.

September 13, 2010 Order, p. 13-14 [Docket No. 15-1].

The state trial court's decision on the merits was entirely reasonable in light of clearly established Supreme Court precedent. The court correctly identified the governing principles of federal law and reasonably applied them to the facts of this case. Accordingly, the Court finds by the state court is neither contrary to established federal law as determined by the United States Supreme Court, nor an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. Petitioner's challenge under the U.S.-Mexico Extradition Treaty must be dismissed.

### D.     Additional Claims in Petitioner's Reply

In his Reply, Petitioner raised two additional grounds for relief that were not included in the Petition or supporting memorandum: his rights to Equal Protection and Due Process were denied by Respondent; and his counsel was ineffective. Pet.'s Reply, p. 1. These claims should be summarily dismissed. First, it is not appropriate to raise new grounds for relief in a reply. Scott v. Fondren, Civ. No. 09-762 (RHK/JJG), 2009 WL 3855926, at *3 (D. Minn. Nov. 17, 2009) (citations omitted);

31

Christian v. Dingle, Civ. No. 06-3056 (ADM/JSM), 2008 WL 2467754, at *2-3 (D. Minn. June 16, 2008) (citations omitted).

Second, Petitioner failed to develop the factual and legal basis for these claims. The Court need not, and will not, address such unsupported claims.  See Horton Dairy, Inc. v. United States, 986 F.2d 286, 291 n. 4 (8th Cir. 1993).

Third, while he raised these claims with the Minnesota Court of Appeals on his direct appeal, he did not appeal the denial of these claims to the Minnesota Supreme Court.  Thus, the claims are unexhausted and procedurally defaulted, and no evidence was presented to this Court to excuse the procedural default on any grounds.

## III.    RECOMMENDATION

For the reasons set forth above, and based upon all the files, records and proceedings herein, IT IS HEREBY RECOMMENDED that

Petitioner Juan Humberto Castillo-Alvarez's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [Docket No. 1] be **DENIED** and this matter be DISMISSED WITH PREJUDICE.


Dated:        November 19, 2014

_s/ Janie S. Mayeron_
JANIE S. MAYERON
United States Magistrate Judge

**NOTICE**

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **December 5, 2014**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within fourteen days after service thereof.  All briefs filed under this Rule shall be limited to 3500 words.  A judge shall make a de novo determination of those portions to which objection is made.   This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.